UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEGAL SERVICES OF EASTERN
MICHIGAN,

        Plaintiff(s),

v.

EDWARD ROSE ASSOCIATES, INC.,

        Defendant(s).
_____/

Case No.  05-74705

Hon.  Sean F. Cox

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for summary judgment.  Both parties have fully briefed the issues and a hearing was held January 30, 2007.  For the following reasons, the Court **GRANTS** Defendant's Motion for summary judgment with respect to Plaintiff's claims of housing discrimination arising from the November 12, 2003 tests and Plaintiff's negligence claim.  The Court **DENIES** Defendant's Motion for summary judgment with respect to Plaintiff's claims of housing discrimination arising from the May 8, 2003 tests.

### I. BACKGROUND

This action arises out of alleged discrimination in housing.  This action is brought by the Legal Services of Michigan Fair Housing Center.  Defendant operates the Charter Oaks Apartments in Davison, Michigan.

**May 8, 2003 Test**

According to Plaintiff, on May 8, 2003, a female African-American tester, Christine

1

Mitze, went to Charter Oaks to inquire about leasing a two bedroom apartment. Mitze was greeted by Sandy Regan. Mitze was told that no two bedroom units would be available for 4 to 6 weeks. Although Mitze was interested in a two bedroom apartment, she was shown a townhouse at Shannon Manor, also operated by Defendant. Mitze received information for Shannon Manor units with a rental rate of $590.00-$720.00 monthly. She was also told that the security deposit for Shannon Manor was $400.00. Mitze requested and received a lease application for Shannon Manor.

Later that same day, May 8, 2003, a female Caucasian tester, Leslie Schutte went to Charter Oaks to inquire about leasing a two bedroom apartment. She was greeted by Darlene Vachon. Leslie Schutte was told that while nothing was available at that time, a two bedroom unit would be available the following week, and another would be available in the middle of June 2003. Leslie Schutte was told the rental rate varied from $370.00 to $405.00 monthly. Leslie Schutte was also told that there was a special on the security deposit, and that it would be $99.00 rather than the usual $250.00. Before going to view an apartment, Leslie Schutte was given a lease application for Charter Oaks, a floor plan, and Vachon's business card.

**November 12, 2003 Test**

Plaintiff conducted a subsequent test in November 2003. On November 12, 2003, a female Caucasian, Mari Schutte went to Charter Oaks to inquire about a two bedroom unit. Mari Schutte was greeted by Regan. Mari Schutte indicated she wanted to move in "about a month." She was shown the different floor plans and asked which floor plan she liked. Mari Schutte was also told that within a month an apartment would be available on each floor. She was shown an apartment and told about the clubhouse and swimming pool. After viewing the apartment, Mari

Schutte was told the apartment she viewed was $500.00 per month, but that if she signed a 13 month lease, she would get $75.00 off each month's rent. Regan provided Mari Schutte with a lease application and a document entitled "Criteria for Application Acceptance."

Later that same day, November 12, 2003, a female African-American tester, LaCracha Mance visited Charter Oaks to inquire about a two bedroom apartment. Mance was greeted by Amy Brill. Mance indicated that she wanted to move in 2 - 4 weeks. Brill took Mance's driver's license and returned it to her after copying the information. Mance was shown the floor plans for the two bedroom apartments but she was not asked which floor plan she preferred. Brill took Mance to view an apartment, but told Mance she would have to retain her driver's license as collateral before showing her the apartment. Mance was told about the clubhouse, swimming pool, and the discounted rent for signing a 13 month lease. However, Mance was told that in order to hold an apartment there was a $100.00 deposit, which would be credited towards the $250.00 security deposit. A subsequent appointment to rent an apartment was set for Mance, she was told she would need to bring a $100.00 deposit to hold the apartment and a money order for $25.00 to run a credit check.

On December 12, 2005, Plaintiff filed a Complaint alleging: (1) violation 42 USC §3604 of the Fair Housing Act; (2) violation of 42 USC §1982 of the Civil Rights Act; (3) violation of MCL §37.2502 of the Michigan Elliott-Larsen Civil Rights Act; and (4) negligence. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. Plaintiff's also seeks attorney's fees and costs.

On October 15, 2006, Defendant filed a Motion for summary judgment on all counts. Plaintiff failed to file a response and failed to appear for the scheduled hearing on Defendant's

3

Motion. The Court gave Plaintiff another opportunity to file a Response, which Plaintiff did on January 22, 2007. Defendant filed a Reply on January 26, 2007.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   ANALYSIS

### A.   Housing Discrimination Claims

The Fair Housing Act provides, in pertinent part:

...[I]t shall be unlawful -

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of race, color, religion, sex, familial status, or national origin.
* * *

(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

42 USC §3604.

The Elliott-Larsen Civil Rights Act provides, in relevant part:

(1) A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, familial status, or marital status of a person or a person residing with that person:

(a) Refuse to engage in a real estate transaction with a person.

(b) Discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with the real estate transaction.
* * *

(e) Represent to a person that real property is not available for inspection, sale, rental, lease when in fact it is so available, or knowingly fail to bring a property listing to a person's attention, or refuse to permit a person to inspect real property, or otherwise make unavailable or deny real property to a person.

MCL §37.2502.

Plaintiff also alleges a violation of 42 USC §1982. The same analysis applies to all three violations alleged by Plaintiff. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000).

**May 8, 2003 Test**

The parties dispute whether Leslie Schutte actually visited Charter Oaks on May 8, 2003. Defendant concedes there is a genuine issue of material fact regarding Plaintiff's discrimination claims arising from the May 8, 2003 test. [Reply, p.2].

**November 12, 2003 Test**

With respect to the November 12, 2003 test, Defendant contends Plaintiff fails to state a claim of housing discrimination.

The differences in treatment identified by Plaintiff are: (1) that Mance, the African-American tester, was told she would have to leave a $100.00 deposit to hold an apartment; (2) Mance's driver's license was retained during the apartment visit while Mari Schutte's was not; and (3) Mance was not asked which floor plan she preferred. [Response, p.12-13]. Plaintiff alleges that Defendant's conduct on November 12, 2003 violated 42 USC §3604(b) and MCL §37.2502(1)(b) because it discriminated in the "terms, conditions, or privileges" of the rental. [Response, p.12]. Defendant argues that these are insignificant differences in treatment that are attributable to the different sales people and not discriminatory practices.

Neither party directs the Court to any authority on whether these alleged differences in treatment are sufficient to state claim under the FHA or the ELCRA. Rather, Defendant argues the Court should apply Title VII principles to find that material adverse action is necessary to differentiate discrimination from minor differences in treatment. [See Motion, pp.12-15]. Plaintiff points out the lack of authority to support Defendant's argument, and further contends that even if the Court did apply the "material adverse action" standard asserted by Defendant, Plaintiff's allegations satisfy that element. [Response, p.14].

The parties admit there is no Sixth Circuit authority addressing the standard to be applied where a plaintiff alleges that differences in treatment during the initial visit to the apartment constituted discrimination in the terms, conditions, or privileges of the rental, but rental was not refused. Defendant fails to direct the Court to any authority supporting its argument that the

6

Court must consider the materiality of the different treatment under these circumstances.

24 CFR §100.65 provides some insight into what terms, conditions, and privileges mean for purposes of housing discrimination:

> (a) It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to impose different terms, conditions or privileges relating to the sale or rental of a dwelling or to deny or limit services or facilities in connection with the sale or rental of a dwelling.
>
> (b) Prohibited actions under this section include, but are not limited to:
>
>> (1) Using different provisions in leases or contracts of sale, such as those relating to rental charges, security deposits and the terms of a lease and those relating to down payment and closing requirements, because of race, color, religion, sex, handicap, familial status, or national origin.
>
> * * *

Both parties advocate application of the *McDonnell Douglas*[1] framework. The Sixth Circuit has applied *McDonnell Douglas* to housing discrimination cases. See *Mencer,* 228 F.3d at 634; and *Selden Apartments v. U.S. Dept. of Housing and Urban Development*, 785 F.2d 152, 159 (6th Cir. 1986). The test articulated by the Sixth Circuit requires a plaintiff to show: (1) that he is a member of a racial minority; (2) that he applied for and was qualified to rent certain property; (3) that he was rejected; and (4) that the housing or rental property remained available. *Mencer*, 228 F.3d at 634-635. Once this prima facie case is established, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the housing decision. *Id*. at 634. If the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id*.

However, there are no Sixth Circuit cases applying the *McDonnell Douglas* framework to

---

[1] *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

a claim such as this one, where testers allegedly received different information regarding the terms and conditions of rental, but were not refused rental. In *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999), the Ninth Circuit applied the *McDonnell Douglas* framework to a claim alleging disparate treatment of rental testers. However, in *Harris*, the claim was brought by an apartment resident, not the testers. Additionally, the claim was brought pursuant to 42 USC §3604(d), not §3604(b).

It is not necessary in this case to decide whether *McDonnell Douglas* is applicable. Under the plain language of §3604(b) and §37.2502(b), Plaintiff fails to establish a case of housing discrimination. The fact that only Mance was required to leave her driver's license during her visit to an apartment and that she was not asked which floor plan she preferred, do not relate to the "terms, conditions, or privileges of sale or rental of a dwelling." With respect to retention of a driver's license, Plaintiff admits that it is the policy of Charter Oaks to retain a driver's license. *See also*, Motion, Exhibit 1, p.2. Notably, Plaintiff admits that there was no disparate treatment between the two testers on May 8, 2003 regarding the testers' driver's licenses. Thus, these two differences are not pertinent in deciding whether Plaintiff creates a genuine issue of material fact regarding violation of §3604(b) because they do not relate to a term or condition of rental.

The only allegation that does relate to a term or condition of rental is the $100.00 application deposit. Plaintiff asserts that Mance was told she would have to leave a deposit of $100.00 with her application, while Mari Schutte was not told this. Defendant's Rental Handbook indicates that a $100.00 deposit is required with the application. [Motion, Exhibit 1, p.3]. Additionally, Plaintiff concedes it does not allege that Mari Schutte was not required to

8

leave the same $100.00 deposit, the allegation is merely that she was not told she would have to. Plaintiff fails to establish a violation of §3604(b) because there is no evidence that the testers were subject to different terms and conditions. There is no evidence that Mari Schutte was not required to pay the $100.00. Further, the failure of a sales agent to point out a particular term or condition does not lead to the inference that the term or condition does not apply. To take Plaintiff's argument to its logical conclusion, a sales agent would be required to point out every single term or condition. Moreover, a claim of discrimination would be established any time a sales agent told one party about a term or condition, but failed to tell another party about that term or condition, without regard to whether the term or condition would actually be disparately enforced. Defendant's failure to tell Mari Schutte that she would have to pay a $100.00 deposit, where there is no evidence that the term would not apply, and in light of the fact that the testers dealt with two different sales agents, does not establish a claim of housing discrimination.

      B.      **Negligence**

Plaintiff claims Defendant Edward Rose Associates, Inc., was negligent in its failure to train, hire, and supervise its agents in order to prevent discrimination.

Plaintiff's claim is without merit. The Michigan Supreme Court recently held that where a plaintiff's claim is entirely based on a negligent violation of a statutorily created tort, the statute provides the sole remedy, unless there was a common-law remedy that predated the statute. *McClements v. Ford Motor Company*, 473 Mich. 373, 382 (2005). Plaintiff does not present any authority for a common-law claim for negligence in the context of housing discrimination. Thus, Plaintiff is limited to statutorily created remedies. Defendants are entitled to summary judgment on Plaintiff's negligence claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for summary judgment with respect to Plaintiff's claims of housing discrimination arising from the November 12, 2003 tests and Plaintiff's negligence claim.  The Court **DENIES** Defendant's Motion for summary judgment with respect to Plaintiff's claims of housing discrimination arising from the May 8, 2003 tests.

**IT IS SO ORDERED.**

>    **S/Sean F. Cox**
>    **Sean F. Cox**
>    **United States District Judge**

**Dated:  January 31, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2007, by electronic and/or ordinary mail.**

>    **S/Jennifer Hernandez**
>    **Case Manager**